NOT FOR PUBLICATION

---

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR
9004-2(c)**

In Re:

David W. Wilber

Joyce L. Wilber

Debtors

---

Case No. 22-13002 (MBK)

Hearing Date: November 22, 2022

Chapter 13

---

**R. Cameron Legg, Esq.**
Oliver & Legg, LLC
2240 Highway 33, Suite 112
Neptune, New Jersey 07753
*Attorney for Debtors*

**William E. Craig, Esq.**
Mortan and Craig, LLC
110 Marter Ave.
Suite 301
Moorestown, NJ 08057
*Counsel for AmeriCredit Financial Services, Inc.
dba GM Financial*

## MEMORANDUM DECISION

This matter comes before the Court upon the Objection to Confirmation filed by

AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial"). The Objection to

Confirmation seeks to have the Chapter 13 Plan filed by David W. Wilber and Joyce L. Wilber

("Mr. Wilber" and "Ms. Wilber" and collectively "Debtors") pay the remaining balance of

$3,806.73 that GM Financial believes is still due and owing in connection with the Debtor's

personal property, a Volkswagen Jetta ("Vehicle"). The Court has considered the parties'

submissions, as well as the arguments set forth on the record during the hearing on November 22,

2022. For the reasons expressed below, the Court overrules GM Financial's Objection to Confirmation.

## I.      Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.

## II.      Background and Procedural History

The parties are familiar with the factual history of this case and the Court will not repeat it in detail here. Mr. Wilber's obligation to GM Financial arose in 2013 when he executed a Retail Installment Agreement in which Mr. Wilber financed $15,749.00 to purchase the Vehicle ("Loan"). Thereafter, Debtors filed two bankruptcy cases to address in part, their financial obligation to GM Financial.

On March 14, 2019, Debtors filed their first Chapter 13 Voluntary Petition and Chapter 13 Plan ("2019 Plan"). (ECF No. 1 and ECF No. 4, Case No. 19-15193). The 2019 Plan was confirmed on October 2, 2019, and provided that GM Financial had a "Value of the Creditor Interest in Collateral" of $1,000 plus $118.40 of interest. (ECF No. 4, Case No. 19-15193). GM Financial objected to confirmation indicating the Vehicle had a value of $5,625.00 in March 2019 and a net loan balance of $3661.78. (ECF No. 14, Case No. 19-15193). By Order dated September 6, 2019, the Chapter 13 Trustee was ordered to pay GM Financial the sum of $4,272.22 over the course of the 2019 Plan and make adequate protection payments. (ECF No. 23, Case. No. 19-15193). Additionally, this Order allowed GM Financial to "retain its lien on the vehicle in this case

until it has been paid in full through the plan, and the debtor completes the plan and receives a

discharge." *Id.* On March 10, 2022, Debtors' Case No. 19-15193 was dismissed for failure to make

plan payments. (ECF No. 79, Case No. 19-15193).

After the Debtors' first bankruptcy case was dismissed, Debtors filed a second Chapter 13

Voluntary Petition and Chapter 13 Plan bankruptcy case on April 13, 2022 ("2022 Plan"). (ECF

No. 1 and ECF No. 4). On June 16, 2022, GM Financial filed a Proof of Claim for an unsecured

claim of $3,806.73 of which $3,436.00 is the principal amount due and owing, $195.69 is interest,

and $175.04 is late fees. (Proof of Claim No. 15).

Through their 2022 Plan, Debtors propose surrendering[1] the Vehicle in full satisfaction of

the $3,806.73 from the Loan under 11 U.S.C. 1325(a)(5(C). (ECF No. 4). The Court construes the

Plan as implicitly objecting to the Proof of Claim filed by GM Financial. GM Financial has

objected, arguing the Debtors owe $3,806.73 for the Vehicle, even though GM Financial released

title of the Vehicle to the Debtors. Debtors counter that GM Financial's claim should be deemed

satisfied because GM Financial chose to dispose of the Vehicle by simply sending title to the

Debtors. (ECF No. 36, ¶ ¶ 7, 8 and ECF No. 17). Debtors posit that GM Financial is not entitled

to the unsecured claim of $3,806.73 because GM Financial did not dispose of the Vehicle in

commercially reasonable manner pursuant to N.J. Stat. Ann. § 12A:9-627 and, therefore, is not

entitled to a deficiency claim under N.J. Stat. Ann. § 12A:9-610. Debtors contend that—given GM

Financial did not dispose of the Vehicle in a commercially reasonable matter—the presumption is

---

[1] The Bankruptcy Code does not provide an explanation as to the meaning of the term "surrender", but case law establishes that the term refers to the act of a debtor surrendering collateral to a lienholder who then disposes of the property pursuant to requirements of state law. *See In re Losak*, 375 B.R. 162, 164 (Bankr. W.D. Pa. 2007). Pursuant to the Code, the surrender of collateral requires a mutual agreement between the parties and occurs as a result of both parties. *Id.* Clearly, the Debtors have consented to surrender in this matter. Whether or not GM Financial consents to the surrender is of no moment as to whether it continues to maintain an unsecured deficiency claim, as discussed *infra*.

that the Vehicle was worth the amount of the debt. *First Aid. Acceptance v. Hutchins*, 315 N.J. Super. 201, 203-04 (Law. Div. 1998).

### III.    Discussion

#### A.  11 U.S.C. § 1325(a)(5)(C)

Debtors' 2022 Plan provides that the Debtors will surrender this Vehicle in full satisfaction of the Loan pursuant to 11 U.S.C. § 1325(a)(5)(C). The issue before this Court is whether GM Financial's release of the Vehicle's title to the Debtors constitutes abandonment, negating its ability to pursue a deficiency claim.

#### B.  Disposition of Collateral In Commercially Reasonable Manner

The Court first considers whether GM Financial disposed of the Vehicle in a commercially reasonable manner. Under applicable law, if GM financial had done so, it would have preserved the full value of its unsecured deficiency claim of $3,806. After default, New Jersey law permits "a secured party [to] sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." N.J. Stat. Ann. §12A:9-610(a). However, the secured creditor must dispose of the collateral in a "method, manner, time, place and other terms, [that are] commercially reasonable." N.J. Stat. Ann. §12A:9-610(b).

To determine whether collateral, such as this Vehicle, was disposed of in a "commercially reasonable" manner, this Court relies on the factors enumerated in N.J. Stat. Ann. §12A:9-627(b). Under this statute, the Vehicle must be disposed of "in the usual manner on any recognized market", and "at the price current in any recognized market at the time of the disposition; or otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." As noted by the New Jersey District Court,

"[c]ommercial reasonableness is a 'flexible concept based upon a consideration of all relevant factors presented in each individual case.' " *Gen. Elec. Cap. Corp. v. Oncology Assocs. of Ocean Cnty. LLC*, No. CIV.A. 10-1972 AET, 2011 WL 6945739, at \*5 (D.N.J. Aug. 22, 2011) (quoting *Security Sav. Bank, SLA v. Tranchitella,* 249 N.J. Super. 234, 239 (App. Div. 1991)). Moreover, if the "cost of repossessing collateral and preparing same for sale likely exceeds the price the secured party will obtain in selling the collateral, repossessing the collateral may not be commercially reasonable." *Id.* at 5.

Once a court rules upon the commercial reasonableness of the collateral's disposal, the court next examines the value of the collateral as compared to the debt owed. New Jersey law provides that "if a creditor fails to dispose of the collateral in a commercially reasonable manner, a presumption arises that the collateral was worth the amount of the debt." *First Fid. Acceptance v. Hutchins*, 315 N.J. Super. 201, 203-04, (Law. Div. 1998) (citing *Ingersoll-Rand Financial Corp. v. Miller Min. Co.,* 817 F.2d 1424 (9th Cir. 1987); *Caterpillar Financial Services v. Wells,* 278 N.J. Super. 481, 504 (Law Div. 1994)).

### C. Analysis

The parties agree GM Financial disposed of this Vehicle by sending the title of the Vehicle to the Debtors. (ECF No. 36, ¶ 7 and ECF No. 17). In Debtors previous bankruptcy case, Case. No. 19-15193, GM Financial asserted their decision to not repossess the Vehicle was a financial one – as it was more economical to relinquish title to the Vehicle to the Debtors instead of pursuing repossession. To that end, GM Financial believes the Debtors are burdened with disposing the Vehicle in a commercially reasonable manner. Even if this Court were to find that GM Financial did not dispose of this Vehicle in a commercially reasonable manner because it was cost prohibitive, the burden of doing so does not shift the Debtors. The language of N.J. Stat. Ann.

§12A:9-610(a) is clear and unambiguous in placing the burden on the "secured creditor" to dispose of the collateral in a commercially reasonable manner.

It is apparent to the Court that by giving the Debtors title the Vehicle, GM Financial did not dispose of this Vehicle in a "commercially reasonable". GM Financial chose to release the title of the Vehicle to the Debtors instead of liquidating the collateral "in the usual manner on any recognized market", and "at the price current in any recognized market at the time of the disposition; or otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition" as required by N.J. Stat. Ann. §12A:9-627(b). In releasing title in this fashion, a presumption arises that the Vehicle was worth the amount of the debt. *See Hutchins*, 315 N.J. Super. at 203-04. GM Financial must overcome this presumption; however, GM Financial has not provided any current valuation of the Vehicle. Therefore, this Court finds GM Financial has not demonstrated the Vehicle is worth more than the debt. Thus, Debtors have no further financial obligations on the Loan and, accordingly, GM Financial's Proof of Claim No. 15 is satisfied in full under the Debtor's Chapter 13 Plan.

## IV.    Conclusion

For the aforementioned reasons, the GM Financial's Objection to Confirmation is overruled. The Court will enter an appropriate Order.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: December 9, 2022